UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANDRE CALIX,
        Plaintiff

Vs.

WARDEN, T. PULLEN, CAPTAIN GEIB,
EXECUTIVE ASSISTANT, BLACKMAN-
CONSTON, LT. HERNANDEZ, K. LEWIS,
DIANE EASTER, S. WHITLEY,
        Defendants.

3:22 cv 484 (KAD)

# CIVIL COMPLAINT

1. Plaintiff, Andre Calix, acting pro se brings this complaint against the above named Defendants for, individually and/or collectively, subjecting him to unconscionable unhealthy and dangerous prison conditions and repeated periods of wrongful segregation causing sickness and emotional distress in violation of the Eighth Amendment of the United States Constitution.

2. Plaintiff arrived at the federal institution FCI-Danbury around about September of 2019. The world was rocked by the novel COVID-19 pandemic and as a result FCI-Danbury was placed on a full locked-down status. Plaintiff has endured restricted movement

under unconscionable unhealthy and dangerous prison conditions at least from March of 2020 until the present date.

3. During the above mentioned period Plaintiff has been forced to live in fully packed living quarters with merely two to three feet of space between inmate double bunks in housing units sustaining a capacity of eighty plus inmates. The capacity limit has been maintained virtually the entire relevant time period.

4. Under the above complained conditions Plaintiff has been subjected to severe COVID and scabies outbreaks. During this period not only was Defendant and former Warden Diane Easter deliberately indifferent to the risks posed by the above mentioned conditions, but, she also ordered medical records to be destroyed to cover up the mass outbreak of illnesses resulting from those conditions. Plaintiff suffered severe COVID-19 illness due to these conditions.

5. In addition, during this period Plaintiff has been forced to breath in black mole that covers virtually every corner of the ceiling in the unit's living area and bathrooms. There is no working and/or adequate ventilation system whatsoever. During the summer it is difficult to sleep given the blistering heat as there is no air condition system and neither is it easy

2-10

to sleep with the multitude of fans running throughout the sleeping area.

6. In addition, during this period FCI-Danbury has been and remains dangerously understaffed. As a result of this dangerous condition and staff's unwillingness and/or inability to adequately supervise the housing units a fighting incident occured in the C-A housing unit on or about September 29, 2020 where Plaintiffed was housed. As a result of Defendant Diane Easter's deliberately indifference to the facility being dangerously understaffed and the institution's proper operation at the hands of available staff Plaintiff was, without justification and due notice, wrongfully segregated on or about September 29, 2020 for the fighting incident which occured in the C-A housing unit, Following complaints made by Plaintiff an Administrative Detention Order was forged and/or falsified purporting to give due notice of why Plaintiff was administratively detained.

7. On or about Monday October 5, 2020 Plaintiff brought the complained of issue regarding wrongful segregation to the attention of Defendant and former Captain S. Whitley. He expressly supported Plaintiff's wrongful segregation without due notice and made it explicitly clear that he did not care about Plaintiff's complaints. Plaintiff on this occasion remained wrongfully segregated for approximately

3-10

38 days. Despite the onslaught of the COVID-19 pandemic, continuous outbreaks of positive cases in the FCI-Danbury facility, and a simultaneous outbreak of scabies, the cells Plaintiff was placed in was visibly caked up with dust, the toilets and sinks had growing bacteria, and the cell bars that secured the cells were caked up with scum. Plaintiff was not provided with cleaning/disinfectant supplies for weeks at a time. In addition, there was not any air ventilation in the cells whatsoever. Also, although the general population began to be permitted social visits Plaintiff was not afforded this opportunity during his 38 days of wrongful segregation.

8. On or about November 6, 2020 Plaintiff was released from wrongful segregation. Defendant and former Unit Manager K. Lewis was charged with overseeing a scabies quarantined unit C-A which entailed stripping all inmates of personal property and institutional issued clothing and assuring that all inmates receive a new issue of institutional clothing. Defendant and former Unit Manager K. Lewis left Plaintiff with one institution uniform, no coat during the winter, resulting in Plaintiff having to walk to get institutional

4-10

meals in freezing temperatures without protection from the adverse weather, one underwear, one t-shirt, and one pair of socks without opportunity and/or means of a clean set of clothing for ten days during a scabies outbreak. Plaintiff brought this issue to the attention of Defendant Lieutenant Hernandez and she expressly supported the action and idea of him remaining with what he had to wear for at least seven days. Also, in accordance with Defendant Diane Easter's orders Plaintiff was threatened with indefinite detention in the prison's unlivable auditorium if he did not take multiple pills of ivermectin, which is not approved and/or authorized by the U.S. Food and Drug Administration for the treatment of scabies, although he neither showed any symptoms of nor was diagnosed with the scabies infection.

9. During the above mentioned extensive period of unconscionable unhealthy and dangerous prison conditions under Diane Easter's administration of FCI-Danbury she did not permit any recreation whatsoever throughout the prison for at least nine months resulting in Plaintiff being denied a meaningful opportunity to exercise and breath fresh air

during this time period. Given these conditions at the institution United States District Judge Michael P. Shea of this District Court ordered Diane Easter to immediately identify and release medically vulnerable inmates to home confinement. Approximately 119 inmates were released under the order, however, immediately upon settlement of the class-action suit that prompted the order Diane Easter crowded the institution right back up with an influx of inmates being repeatedly transferred into FCI-Danbury.

10. Under Warden T. Pullen's administration of FCI-Danbury the unconscionable unhealthy and dangerous prison conditions mentioned above have become much more pronounced and she did not permit any recreation whatsoever throughout the prison from October 2021 to approximately February 2022 resulting in Plaintiff being denied a meaningful opportunity to exercise and breath fresh air during this time period. Defendant Warden T. Pullen also continued the influx of repeated transfers of inmates into FCI-Danbury, under the above mentioned conditions to the point of inmates having to be housed and sleep in the unlivable auditorium and the unlivable B-A housing unit/SHU.

6-10

11. Because of Defendant Warden T. Pullen's deliberate indifference to the risks posed by the above mentioned prison conditions Plaintiff was diagnosed with COVID-19 on January 5, 2022. Plaintiff and 26 other inmates out of C-A housing unit were ordered to pack up the sheets and blankets from their bed and a small amount of personal property, to leave the majority of personal property in C-A unit, and were transferred to the unlivable B-A housing unit, which is designated as SHU by the BOP Northeast Region, for 10 days of isolation. On or about January 6, 2022 He was moved to A-A unit and locked in a cell for 10 days of isolation.

12. After 10 days of isolation on or about Saturday January 15, 2022 Plaintiff and 40 plus other inmates were moved into the unlivable B-A housing unit /SHU. Captain Geib made a round in the unit and Plaintiff complained to her about there being just one phone for 40 plus inmates, one computer, no hot water, no television, puddles forming on the floor from the leaks in the ceiling etc. and she responded by stating she could look into getting hot water, however, Plaintiff was asking her for too much. On or about Saturday January 21, 2022 Defendant Executive Assistant

7-10

Blackman-Conston showed up at the entrance to the unlivable B-A unit at which time attempted to express the same complaints. She said she was not there to talk about anything. Plaintiff expressed his complaints and stated he needed a greivance form. She said there are bigger things to worry about than his complaints and a grievance form.

13. On or about Wednesday January 26, 2022 U.S. Senators Richard Blumenthal and Chris Murphy visited FCI-Danbury in response to complaints made by prison staff about the above-mentioned unconscionable unhealthy and dangerous prison conditions. They came to the unlivable B-A unit, however, were not allowed to enter and Plaintiff was not permitted to express his complaints to them because Defendant Warden T. Pullen and two corrections officers were blocking all manners of access to them. Plaintiff remained in the B-A unit under the conditions complained of in this complaint until February 23, 2022.

14. Although Plaintiff has taken several complaints complained of herein all the way up to the BOP's General Counsel in Central Office the use of the Administrative Remedy Program has proved to be unavailable given BOP and FCI-Danbury prison official's unwillingness to provide

8-10

remedies and respect the process. As can be seen by the various Administrative Remedy complaints attached to this complaint BOP officials, all the way up to the Central Office level, have used systemic tactics to undermine the process in which Plaintiff sought to have his complaints addressed through the BOP Administrative Remedy Program by failing to issue Plaintiff a receipt of complaint, as required by policy, in order to distort the tolling of time in which staff is required to respond, by give incomprehensive and/or incoherent responses when and if a response was actually give, and by simply not being forthcoming with regard to the process.

15. Determined to discourage use of the Administrative Remedy Program executive staff came up with yet another barrier to prevent its use by creating a policy to disallow any staff who is not an inmate's assigned counselor to give an administrative remedy form to the inmate. In other words an inmate can now only receive these forms from their assigned counselor which is a challenge in itself given the counselor is likely not on the unit and movement is restricted to the unit. Given this condition created by executive

9-10

staff's new policy Plaintiff has not been permitted to address any further complaints through the Administrative Remedy Program because his requests for the required forms go unanswered.

16. Supporting evidence for the violations complained of herein are attached to this complaint and thus made a part of the record. Plaintiff has suffered COVID-19 illness and sever emotional distress and thus demands $1,000,000.00 (one million dollars) in compensatory damages. He also requests a trial by jury.

Dated: March 30, 2022

Respectfully Submitted,

ANDRE CALIX
Andre Calix, pro se
FCI-Danbury
33½ Pembroke Rd
Danbury, C.T. 06811

10-10

LOCAL NEWS

# Connecticut senators say they were denied full access to federal prison

The senators were there in response to correctional officers' complaints about a staffing shortage and lack of coronavirus precautions.



Credit: FOX61
U.S. Senators Richard Blumenthal (D-CT) and Chris Murphy (D-CT)

Author: **Associated Press, FOX61 Staff**
Published: **5:27 PM EST January 26, 2022**
Updated: **5:47 PM EST January 26, 2022**

 

DANBURY, Conn. — Connecticut's two U.S. senators said Wednesday they were denied access

to parts of a federal prison in Danbury while they were trying to examine conditions there.

Democratic Sens. Chris Murphy and Richard Blumenthal said they went to the Danbury Federal Correctional Institution on Wednesday but were not allowed to see the women's facility. They were allowed into a men's unit.

### The tech that will invade our lives in 2022

FEATURED BY

"This is unacceptable," Murphy said on social media. "My impression is the decision to limit our access came from well above the warden. She is managing the best she can."

*Sign up for the FOX61 newsletters: Morning Forecast, Morning Headlines, Evening Headlines*

The senators were there in response to correctional officers' complaints about a staffing shortage and lack of coronavirus precautions.

Murphy called the tour "very restrictive and very abbreviated" in a news update Wednesday, and he said he and Blumenthal remain concerned about the conditions of the correctional facility.

**RELATED:** Biden's justice nominee to replace Breyer vacancy could be a Black woman: Blumenthal

The federal Bureau of Prisons said concerns about the spread of COVID-19 itself were behind the denial.

"From what we gathered, around 40% of inmates are in either isolation or quarantine. Plus, the facility is badly understaffed. This poses a major risk to both inmates and staff and it must be addressed." Murphy added on Twitter.

"The drastic lack of staffing has persisted. In fact, it's worse than it was last year or the year before so far as the numbers indicate," Blumenthal said.

Murphy is calling for a faster COVID testing turnaround to reduce exposure, as he said it takes about 2-3 days to get results at the facility.

**RELATED:** 2 inmates die from COVID-19: DOC officials

"Why hasn't the BOP (Bureau of Prisons) invested in quicker testing systems to better manage the populations?" Murphy asked.

"As a member of the Judiciary Committee, I'm going to ask the chairman to convene a staff investigation that will encompass not only Danbury but other institutions like it where there may

be equally inadequate staffing," Blumenthal said.

The bureau did not immediately respond to questions from the Associated Press about the correctional officers' concerns.

---

*Have a story idea or something on your mind you want to share? We want to hear from you! Email us at newstips@fox61.com*

**Court: Women-only gym areas violate Connecticut discrimination law**



---

**HERE ARE MORE WAYS TO GET FOX61 NEWS**

Download the FOX61 News APP

**iTunes:** Click here to download

**Google Play:** Click here to download

Stream Live on **ROKU:** Add the channel from the ROKU store or by searching FOX61.

Steam Live on **FIRE TV:** Search 'FOX61' and click 'Get' to download.

**FOLLOW US ON** TWITTER, FACEBOOK & INSTAGRAM

# DANBURY FCI UNION REP REACTS TO SENATORS BEING DENIED ACCESS

Lou Milano | Published: January 28, 2022

f    SHARE ON FACEBOOK        SHARE ON TWITTER

Back in December of 2021, a rep **(Robert Curnan) from AFGE Local 1661 at the Danbury Federal Corrections Institution joined the Ethan & Lou Show** on I-95 to talk about how the union claims the Danbury prison is dangerously understaffed.

 Get our free mobile app

The union had purchased a billboard on Rte. 37 near the prison that read **"Dangerously understaffed prison ahead, are you safe?"** The billboard grabbed a lot of headlines from media around the state that attracted the attention of Senators Richard Blumenthal and Chris Murphy.

The two Senators were scheduled for a tour of the facility on Wednesday (1/26/22). Murphy and Blumenthal went on the tour but were not pleased when they were **denied access to certain areas** of the prison.



I-95

We reached out to our contacts with the **AFGE Local 1661** and they put us in contact with prison Treasurer and union member Pat Wynne who agreed to come on the Ethan and Lou Show and talk about the issue. Below is a partial transcript of our conversation with Wynne, the entire interview is available in the video player above.

**Lou:** Ethan, joining the show now is the Treasurer of Danbury FCI, Pat Wynne joins us on the show, hey Pat.

**Pat:** *How you doing guys?*

**Lou:** We're doing great, I want to just establish some background here, we spoke to a representative from your union back in December of 2021 about claims made by the union that the prison is understaffed. We saw that awesome sign that you guys put up on Rte. 37 about the dangerously understaffed federal prison ahead. I forget who we talked to what it Robert or Sean?

**Pat:** *You probably spoke to both but that interview that you're referencing was Robert Curnan, that's the local's President.*

**Lou:** Excellent, so now, you guys got a lot of press about claiming that you're dangerously understaffed, you can stop me at anytime if I'm wrong about any of this, there was a scheduled tour for Senators Richard Blumenthal and Chris Murphy yesterday. They came by and they claim, they were denied access to certain areas in the prison and denied access to the prison themselves. Murphy said it's clear that a decision was made to stop them from seeing some of the conditions in the prison, how do you respond to that?

**Pat:** *Uh, well yes, the entire executive board of the union, we've got about six people on the executive board, toured with the Congressman (Senators), but to get back to that sign real quick, yeah that sign created a ton of feedback from the community, local, state leaders and obviously our federal counterparts, you know the Senators that actually oversee the Bureau of Prisons. So, yes they did come into the Institution, they were not allowed to go to the Federal satellite low institutions which houses low security female inmates. And then, once we got into the federal correctional institution which is the low security men's prison, they also denied them access to the housing units where the inmates were under the guise of COVID and that is where Senator Murphy was extremely displeased because the whole reason for him coming was to meet the staff, about the understaffing issues and also see the effects of COVID on the actual institution itself.*

  

HOME | ON-AIR | LISTEN | APP | WIN STUFF | MORE ⌄          LISTEN NOW

*Pat: The administration, the executive staff here at Danbury, the warden is the CEO here so she actually made the call to not allow the U.S. Senators into the housing unit.*

**Lou:** So, there was a group decision made before their arrival?

*Pat: Before their arrival, right. There was a pre-scheduled or pre, how would you say it? A tour was setup where the Senators wanted to go, so the union did their best to try to have them go into a couple housing units because that's what they wanted to see. They wanted to meet with some of the staff, to actually talk more about the understaffing issues, the low staff here at Danbury.*

**Lou:** When you say they were denied access, that was COVID reasons, for their safety, is that what the prison is saying?

*Pat: Yes. to help the spread of COVID is what they were...*

**Ethan:** Did they (Senators) know that before they arrived at the prison?

*Pat: Who, the Senators?*

**Ethan:** Yes.

*Pat: No, no they thought they were going to have access to these housing units, which they should have access to the housing units. Again, you've got to remember Senator Murphy, like he said yesterday is on the Appropriations Committee who frees up money for federal agencies and Mr. Blumenthal was actually on the Judiciary Committee that has oversight for the Federal Bureau of Prisons and I believe, the entire Department of Justice. So, they should be allowed access to any point of that prison.*

WHEN ERIC CLAPTON FELT
EDDIE VAN HALEN, BRIAN M

RECOMMENDED FOR YOU



Sad New Details
Come To Light
About Bob Saget's
Death

Th
Kel
Jus
He

 

Matthew Gray
Gubler's
Transformation Is
Quite Staggering

Jac
Bov
Coz
Urt

For immediate release:

## CLASS ACTION FILED AGAINST BUREAU OF PRISONS FOR
## GROSS FAILURES IN COVID-19 RESPONSE AT FCI DANBURY

A class action lawsuit was filed today in federal court in Connecticut seeking to require federal officials to provide emergency measures to protect the 1,000+ women and men at the three facilities within the low security federal prison in Danbury, Connecticut ("FCI Danbury") from COVID-19.

The lawsuit responds to the COVID-19 disaster that is underway at FCI Danbury. The prison has one of the biggest outbreaks in the federal system, and in recent weeks, more than forty incarcerated people and more than thirty staff have tested positive for COVID-19. Many more are likely positive, but the Bureau of Prisons is not reliably releasing that information and, worse yet, for some time stopped testing.

"Public health experts uniformly agree that prisons are hot spots for the spread of COVID-19 that require prison officials to take swift action to protect the lives of those in their custody," said Professor Sarah Russell, one of the lawyers representing the proposed class. "FCI Danbury has completely disregarded these warnings, placing incarcerated people at an unbearable and unconstitutional risk of contracting the disease."

The people imprisoned at FCI Danbury are among the most vulnerable to COVID-19. They live in close quarters, with units containing more than 100 people lined up in rows of bunk beds, and with communal bathrooms and dining areas. Many are experiencing serious symptoms, including high fevers and difficulty breathing, but have not been tested or removed from these crowded living areas. Access to medical care in the facility is woefully inadequate, and there have been significant delays in getting critically ill prisoners transported to local hospitals.

FCI Danbury contains a women's "camp," the lowest level security facility in the entire federal prison system. Yet, despite the ability to release low-level prisoners, those incarcerated at FCI Danbury remain in dangerous living conditions virtually certain to promote the spread of COVID-19 through the Danbury prisoner and staff populations.

The lawsuit filed today asks the federal district court to order that the Bureau of Prisons immediately identify prisoners who are medically vulnerable and can be safely relocated to home confinement, as Attorney General Barr has directed, and to provide safe and humane conditions for those imprisoned at FCI Danbury.

The case is brought by the law firm of Silver Golub & Teitell LLP, the Civil Justice Clinic at Quinnipiac University School of Law, and the Jerome N. Frank Legal Services Organization at Yale Law School.

For more information, contact:
Marisol Orihuela, Yale Law School - 404-625-2307; Sarah Russell, Quinnipiac University School of Law - 917 749-4008; David S. Golub, Silver Golub & Teitell LLP - 203 253-9444; Jonathan Levine, Silver Golub & Teitell LLP - 203 273-2330

 Yale Law School

(/)

Tuesday, July 28, 2020

# Clinic Reaches Settlement Agreement in Bureau of Prisons COVID-19 Case

The parties in *Martinez-Brooks v. Easter* have reached an agreement to ensure that the Federal Bureau of Prisons (BOP) takes speedy action in reviewing medically vulnerable individuals for release from the Federal Correctional Institution at Danbury, Connecticut (FCI Danbury).

The lawsuit was filed on April 27, 2020 (https://law.yale.edu/yls-today/news/clinic-class-action-filed-against-federal-bureau-prisons) by the Legal Clinic at Quinnipiac University School of Law, the Jerome N. Frank Legal Services Organization at Yale Law School, and the law firm Silver Golub & Teitell LLP on behalf of people incarcerated at Danbury FCI. The lawsuit is being settled on behalf of a class of those who are medically vulnerable to COVID-19, under standards established by the Centers for Disease Control and Prevention.

"We are gravely concerned about the well-being of people incarcerated at FCI Danbury during this pandemic," said Quinnipiac University School of Law Professor Sarah Russell '02, one of the lawyers representing the proposed class. "We are hopeful that the process set forth in the agreement will mean more medically vulnerable people will soon be safely home with their families."

READ: Settlement Agreement in *Martinez-Brooks v. Easter* (https://law.yale.edu/sites/default/files/area/clinic/document/cjac_settlement_agreement_fully_executed.pdf)

COVID-19 presents an extreme and well-recognized public health risk in a confined institutional setting where prisoners cannot practice adequate social distancing or necessary hygiene. The lawsuit alleged that BOP failed to make full and sufficient use of its authority to transfer prisoners to home confinement to protect them against COVID-19 at FCI Danbury despite explicit directives from the Attorney General of the United States that it should use that authority aggressively and on an expedited basis to transfer appropriate prisoners to home confinement.

On May 12, 2020 Judge Michael P. Shea of the United States District Court for the District of Connecticut issued a Temporary Restraining Order (https://law.yale.edu/yls-today/news/criminal-justice-advocacy-clinic-wins-tro-against-bureau-prisons) finding that officials at FCI Danbury had been making insufficient use of their home confinement authority to protect prisoners during the

## In the Press

Thursday, February 3, 2022

Alexander Vindman's Lawsuit Is Right on the Law (/exturl/node/11910449)
Just Security

Tuesday, February 1, 2022

New Haven and Yale Community Discuss Rising Meat Prices (/exturl/node/11910450)
Yale Daily News

Tuesday, February 1, 2022

Biden vs. Trump: The Makings of a Shattering Constitutional Crisis — A Commentary by Bruce Ackerman '67 (/exturl/node/11910381)
Politico

Monday, January 31, 2022

Linda Greenhouse: Sotomayor Faced Similar 'Undercutting, Backbiting' as Today's Supreme Court Contenders (/exturl/node/11910382)
MSNBC

Case 3:22-cv-00484-KAD   Document 1   Filed 04/04/22   Page 20 of 51

outbreak, and ordering FCI Danbury to undertake expedited consideration for home confinement of individuals at higher risk for severe illness from COVID-19. Following Judge Shea's Orders, BOP initially identified a group of 313 medically vulnerable individuals at FCI Danbury and reviewed them for home confinement release. Of those individuals, 119 have since been released to home confinement or community placement.

"With everything going on in the world right now, I am overjoyed to know that over 100 of our clients have left FCI Danbury, and that many of them have already gone home to their families and communities," said Brendan Bernicker '22, a student in the Criminal Justice Advocacy Clinic, which represented the Petitioners. "I am so proud to have been a part of that, and thrilled that the skills I am learning in the classroom will continue to empower me to make a real difference in people's lives."

David S. Golub '73, another attorney for the Petitioners, noted the importance of the court's orders. "Judge Shea's Orders helped ensure that medically vulnerable persons would be immediately identified and released promptly to home confinement whenever feasible. The settlement agreement, which requires BOP to comply with the terms of those Orders in the future, could not have been reached if Judge Shea hadn't recognized the emergency need to protect these medically vulnerable persons."

The agreement outlines processes through which the BOP will continue to identify medically vulnerable individuals incarcerated at FCI Danbury or who arrive in the future. Once identified as medically vulnerable, under the agreement BOP will consider the incarcerated person's suitability for home confinement. A medical clinician either employed or appointed by the BOP will verify that all medical conditions are identified for the home confinement review, and the review process will follow the standards previously ordered by Judge Shea. This includes speedy consideration for release to home confinement and substantial weight provided to each individual's COVID risk factors. The agreement provides that Judge Shea will retain jurisdiction to oversee the process.

Before the agreement can take effect, Judge Shea will conduct a fairness hearing, which will provide all members of the class the opportunity to state any objections to the agreement. The agreement is tentatively scheduled to terminate on October 31, 2021.

# Related News



(/yls-today/news/liman-fellow-holly-thomas-04-confirmed-ninth-circuit)

Wednesday, February 2, 2022



(/yls-today/news/professor-moyn-delivers-carlyle-lectures-oxford)

Wednesday, February 2, 2022



(/yls-today/news/seminar-explores-private-law-and-public-justice)

Tuesday, February 1, 2022



U.S. Department of Justice
Federal Bureau of Prisons
FCI Danbury
33 ½ Pembroke Rd
Danbury CT 06811-3099

November 4, 2020

## MEMORANDUM TO INMATE POPULATION

RE:            Commissary

                /s/
FROM:       Betty Sue Ploor, Acting Associate Warden

Due to the Scabies mitigation underway at FCI Danbury, Housing Units will not be able to shop commissary until the entire unit has completed two rounds of medicine, showers and packed property has been returned.

Please be patient as we work to rid the institution of Scabies.

If you have any questions, please contact your Unit Manager.

# Ivermectin Use in Scabies

ROBERT S. FAWCETT, M.D., M.S., York Hospital Family Practice Residency, York, Pennsylvania

*Am Fam Physician.* 2003 Sep 15;68(6):1089-1092.

Oral ivermectin is an effective and cost-comparable alternative to topical agents in the treatment of scabies infection. It may be particularly useful in the treatment of severely crusted scabies lesions in immunocompromised patients or when topical therapy has failed. Oral dosing may be more convenient in institutional outbreaks and in the treatment of mentally impaired patients. Ivermectin has been used extensively and safely in the treatment of other parasitic infections, but the U.S. Food and Drug Administration has not approved the drug for the treatment of scabies infection. The safety of oral ivermectin in pregnant and lactating women and young children has yet to be established.

Scabies is a skin disease caused by infestation with the mite *Sarcoptes scabiei.* Although it may infest any human in any climate, it is most common in children younger than two years and is endemic in the tropics.[1] The female mite, whose life expectancy is about 30 days, burrows into the epidermis to lay eggs. The eggs hatch into larvae in three to four days, and larvae mature into adults in 14 to 17 days.[2] Male adult mites are smaller than females, remain on the skin surface, and die shortly after mating. There is evidence that mites can live for up to three days without a human host, and a reported outbreak of scabies among laundry workers provides evidence that fomites may spread disease.[3] While animal strains of scabies exist and can infect humans, the mites cannot complete their life cycle or be passed to other hosts.[4]

## Diagnosis

Symptoms of scabies infestation include rash and intense pruritus that is often worse at night. The lesions begin as tiny erythematous papules and can progress to vesicles or pustules. Linear burrows are a classic feature but are not seen commonly. Excoriation and ulceration also may be present, and a more generalized hypersensitivity reaction, including urticaria, may occur. In severe cases and in immunocompromised hosts, large areas of crusting may be seen.

# Talking Points for Scabies Mitigation

**Health Services Information**

- An inmate in the institution has been diagnosed with scabies. Information about scabies is available on TRULINCS.
- Medical has decided to provide precautionary treatment to the entire unit
- All inmates will be weighed and given their first dose of treatment today
- 7 days after first dose of medication, all inmates will receive a second dose

**Unit Team Information**

- After you receive your first dose of medication, you will need to begin to pack your personal items. All inmates will be required to place your personal items in your gray storage box and/or plastic bags. Items that you can keep in your possession includes: eyeglasses, wedding rings, one bottle of vitamins, C-pap, canes, walkers, wheelchairs, Rx medication, shower shoes, and depend undergarments. The rest of your personal items, including headphones, radios, legal work, etc. must be stored. Properly labeled gray boxes and/or bags will be stored in the Bus Stops in each unit. (Gray boxes must be sealed in air tight plastic bags.) The removal of personal property from your possession is not punitive. It is required to allow time for the scabies mites to die. All lockers and living spaces will be inspected to ensure no unauthorized property is being left behind.
- All inmates will need to turn in their institutional clothing (pants, shirts, undergarments, coats, belts, socks, and boots) except for **one set** of institution clothes you are wearing. (All personal clothes will be stored.)
- If an inmate refuses treatment, he will be placed in the auditorium indefinitely

**Day 2 Logistics**

- The morning after you receive your first dose of medication, Laundry will come through the unit and collect all linen.
- Authorized personal property will need to be sealed in a small plastic bag and be left in your locker.
- All mattresses will be leaned against the bunk beds to be inspected and sanitized.
- All inmates will need to shower and receive a new sets of institution clothing. (Inmates that showered last night or early in the morning will still need to take another shower after new clothes are issued.) The dirty set of clothing you were wearing will be placed in bins as you depart the shower. You will receive a new mask and depart the unit to Recreation.
- The unit will be sprayed with a decontamination spray after everyone exits the unit. Leave your shower shoes on the floor under your bed to be decontaminated.
- Inmates will return to the unit and receive clean linen and toiletries. Inmates will need to clean their personal living spaces after the decontamination process.

**Additional Information**

- Work call will be suspended for 7 days
- Pill line, recreation, and meal pick up will be continued as normal
- Commissary items cannot be purchased for at least one week during the Scabies mitigation period.
- Visitation will continue while during the scabies mitigation process.
- Clean bedrolls and hygiene items will be issued.

LAST NAME, FIRST, MIDDLE INITIAL                    REG. NO.              UNIT              INSTITUTION              7

Part A - REASON FOR APPEAL  I complained regarding the fact that Warden, D. Easter has no regard whatsoever for the Remedy Program and how she employs numerous tactics to discourage proper use of the program. Her utter disregard for the program is shown by the fact that she did not provide me receipt of Request which is a regular practice to distort the date of receipt. Please note the Rejection Notice marks the date received 12/21/2020 when in fact I turned it in to Unit Manager Lewis Tuesday 12/8/2020. And the preposterous reason for rejection is that I did not submit proper number of continuation pages when there clearly are no continuation pages.

12/25/2020
DATE

ANDRE CALIX
SIGNATURE OF REQUESTER

Part B - RESPONSE

_____                              _____
        DATE                                       REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

Part C - RECEIPT
                                              CASE NUMBER: _____

Return to: _____      _____    _____    _____
           LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.        UNIT          INSTITUTION

SUBJECT: _____

_____                              _____
        DATE                                  SIGNATURE, RECIPIENT OF REGIONAL APPEAL

FPI-PEPR                PRINTED ON RECYCLED PAPER                          BP-230(13)
                                                                          JUNE 2002

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **CALIX  ANDRE**          **68956-054**    **C-A**      **FCI - Danbury**
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

Part A- INMATE REQUEST  I complained regarding the fact that the Administrative Remedy Program is not administered to be a forthcoming process and that numerous tactics are utilized to discourage its use. I request the program to be eliminated and for complaints to be submitted directly to court.

**12/7/2020**
DATE

**ANDRE CALIX**
SIGNATURE OF REQUESTER

Part B- RESPONSE

_____          _____
DATE                      WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE          CASE NUMBER: **1061861-F1**

                                    CASE NUMBER: _____

Part C- RECEIPT

Return to: _____  _____  _____  _____
          LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____          _____
DATE                  RECIPIENT'S SIGNATURE (STAFF MEMBER)



USP LVN          PRINTED ON RECYCLED PAPER          BP-229(13)
                                                    APRIL 1982

DAN 1330.18
ATTACHMENT A

**FEDERAL CORRECTIONAL INSTITUTION**
**DANBURY, CONNECTICUT**
**INFORMAL RESOLUTION**

Inmate Name: ANDRE CALIX                    Reg. No. 68956-054
          Unit: C-A                         Date: 11/11/2020

**NOTICE TO INMATE**: You are advised that normally prior to filing a
Request for Administrative Remedy, BP-229(13), you must attempt to
informally resolve your complaint through your Correctional Counselor.
Please follow the three steps listed below:

1. State your complaint: The Administrative Remedy Program is not
respected by staff and the Warden D. Easter. BP-8s and BP-9s
are rarely answered, a receipt and acknowledgment of the
complaint being accepted is hardly ever given. I myself
have never received a receipt stating when my complaints were → Continue
on back

2. State what actions you have made to informally resolve your
complaint: ☑ I have constantly tried to get BP8s, 9s etc. and
obtain receipts of ones I have submitted all from employees
who have gross & indifferent attitudes toward the program.

3. State what resolution you expect: I expect for this program to be
done away with and complaints allowed to be submitted directly to
court until the program can be restructured to serve its purpose, under the
Prison Litigation Reform Act, under court supervision.

Inmate's Signature: ANDRE CALIX          Date: 11/11/2020

4. Correctional Counselor's Comments (Steps Taken to Resolve): _____
   SEE Below

5. Informal Resolution WAS / WAS NOT accomplished. (Circle One)

_____        _____
Correctional Counselor             Unit Manager

_____        _____
Date                               Date

| | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 11-10-10 | 11/12/10 | | | |
| TIME | 9:55am | 10:26 | | | |
| COUNSELOR | | M | | | |

12-2-20 NO response
MFUC

Continued

... received and logged into SENTRY which all serves to impede and/or discourage my use of the program and advance to the next level in seeking my remedy. It also serves to keep me from having a record of the facts. I currently have two BP-9s that have neither been acknowleged nor addressed by the Warden D. Easter although her response is past due. I have a BP-8 that I had to just refill and resubmit because the original that I turned into Case Manager Lassard on Thursday 10/29/2020 was never turned into Counselor Bozek as Lassard said he would do. In some fashion or form this same practice is carried out in every other institution I have been to while in USMS and BOP custody effectively serving as a systemic discouragement to utilizing the program. And finally If the complaint is directly against an officer or other BOP employee you are told that you will not be informed of any action taken with regards to the complained of employee all the way up to the Central office level. All of these things renders the Administrative Remedy Program futile and effectively unavailable. I expect court intervention immediately. I expect for this program to be done away with and complaints allowed to be submitted directly to the Court until the program can be revamped and/or restructured to make it serve its intended purpose, under the Prison Litigation Reform Ac under court supervision.



BP-A148.055
SEP 98
**INMATE REQUEST TO STAFF** CDFRM
U.S. DEPARTMENT OF JUSTICE                                FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) Counselor Cangrrozi | DATE: February 22, 2022 |
|---|---|
| FROM: ANDRE CALIX | REGISTER NO.: 68956-054 |
| WORK ASSIGNMENT: N/A | UNIT: B-A |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request. I need a (sensitive) BP-9-formal Administrative Remedy form and a BP-8 to write up the conditions of confinement that I have been subjected to since early January of this year. The warden is fully aware that I along with 40 plus other inmates have been housed in this B-A unit that is designated as a SHu by region, has no hot water machine to allow for the preparation of commissary items, 1 computer which does not permit for electronic emails to staff, 1 telephone which is insufficient for the number of inmates here along with numerous other policy violations.

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER          **SECTION 6**

TRULINCS  68956054 - CALIX, ANDRE - Unit: DAN-A-A

------------------------------------------------------------------------------------------------

FROM: 68956054
TO: West Unit
SUBJECT: ***Request to Staff*** CALIX, ANDRE, Reg# 68956054, DAN-A-A
DATE: 02/24/2022 08:57:59 AM

To: West unit Team
Inmate Work Assignment: n/a

I have been trying to get a BP-8 in order to informally resolve this issue with me being in a housing unit (B-A) which is designated as the SHU, has limited telephone access,computer access limited with no access to staff through electronic email, and no hot water or t.v. as the rest of the general population has. I have been trying to get this informally resolved for nearly a month now with no response abd/or my requests for BP-8 being ignored and now my time limit according to policy to informally resolve the issue has lapsed. The situation has become much worse as I have now been placed in even more restricted and segregated housing in the A-A unit and I now need a BP-9 to address the issue.

TRULINCS  68956054 - CALIX, ANDRE - Unit: DAN-A-A

----------------------------------------------------------------------------------------------

FROM: 68956054
TO: Warden
SUBJECT: ***Request to Staff*** CALIX, ANDRE, Reg# 68956054, DAN-A-A
DATE: 02/24/2022 08:59:49 AM

To: Warden Pullman
Inmate Work Assignment: n/a

I am writing to complain about the issue about How I have been in restricted housing for close to 2 months and now I am in even more restricted housing in the A-A unit which is more restricted for no reason.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: APRIL 1, 2021


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : ANDRE CALIX, 68956-054
      DANBURY FCI    UNT: W    QTR: C02-014L
      ROUTE 37
      DANBURY,  CT 06811



FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 1061727-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED   : MARCH 16, 2021
SUBJECT 1       : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT PROVIDE A COPY OF YOUR   INSTITUTION
                ADMINISTRATIVE REMEDY REQUEST (BP-9) FORM OR   A COPY
                OF THE (BP-09) RESPONSE FROM THE WARDEN.

REJECT REASON 2: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                WRONG LEVEL.   YOU SHOULD HAVE FILED AT THE
                INSTITUTION,   REGIONAL OFFICE, OR   CENTRAL
                OFFICE LEVEL.

                            *NO RECORD*

MA

**U.S. Department of Justice**

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

2/2/21

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: ___**CALIX  ANDRE**___  ___**68956-054**___  ___**C-A**___  ___**FCI - Danbury**___
         LAST NAME, FIRST, MIDDLE INITIAL              REG. NO.              UNIT              INSTITUTION

**Part A - REASON FOR APPEAL**  The Regional Director has neither acknowledged receipt nor responded to the attached appeal.

___**2/18/2021**___                                        ___**ANDRE CALIX**___
            DATE                                                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

IRAR
WRR

RECEIVED

MAR 1 8 2021

Administrative Remedy Section
Federal Bureau of Prisons

_____                              _____
         DATE                                              GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                      CASE NUMBER: _**1061727-A1**_

**Part C - RECEIPT**

                                                 CASE NUMBER: _____

Return to: _____          _____  _____  _____
              LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.        UNIT        INSTITUTION
SUBJECT: _____

_____                              _____
         DATE                                     SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN              PRINTED ON RECYCLED PAPER                                   BP-231(13)
                                                                                JUNE 2002

12/16/20 ☑☐

**U.S. Department of Justice**                                   **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From:   __CALIX  ANDRE__        __68956-054__    __C-A__    __FCI-Danbury__
              LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.            UNIT              INSTITUTION

**Part A - REASON FOR APPEAL**  I complained regarding the fact that under Warden, D. Easter's watch the ten-man rooms were arbitrarily and apparently spitefully closed providing less living space during a time of a covid-19 and scabies outbreak in the institution. Warden, D. Easter has neither acknowleqded receipt nor responded to the complaint.

__12/20/2020__                                           __ANDRE CALIX__
       DATE                                                      SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____DATE_____                                       REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                               CASE NUMBER: _____

**Part C - RECEIPT**
                                                        CASE NUMBER: _____

Return to: _____    _____   _____   _____
                  LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____DATE_____              ♻                      SIGNATURE, RECIPIENT OF REGIONAL APPEAL

FPI-PEPR                    PRINTED ON RECYCLED PAPER                                    BP-230(13)
                                                                                        JUNE 2002

11/16/20

UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS

**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __CALIX    ANDRE__    __68956-054__    __C-A__    __FCI-Danbury__
 LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A– INMATE REQUEST I made a complaint regarding the closing of the ten-man rooms and the resulting force to live and sleep less than six feet on all sides whether at the bed or locker. This occurs at a time during the novel CoVID-19 pandemic and a scabies outbreak at this institution. The decision to close the ten-man rooms was a despotic action given the fact they were briefly opened in response to the civil class action instituted to address the pandemic in relation to the conditions that ~~allegedly~~ pose a danger at this institution and they were closed immediately following word of a proposed settlement in that case. I request the ten-man rooms to be immediately opened and to receive documentation detailing the circumstances behind the current closures.

__11/22/2020__
 DATE

__ANDRE   CALIX__
 SIGNATURE OF REQUESTER

Part B– RESPONSE

_____    _____
 DATE    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE    CASE NUMBER: _____

    CASE NUMBER: _____

Part C– RECEIPT

Return to: _____

DAN 1330.18
ATTACHMENT A

### FEDERAL CORRECTIONAL INSTITUTION
### DANBURY, CONNECTICUT
### INFORMAL RESOLUTION

Inmate Name: _ANDRE CALIX_        Reg. No. _68956-054_
Unit: _C-A_                       Date: _11/13/2020_

**NOTICE TO INMATE**: You are advised that normally prior to filing a Request for Administrative Remedy, BP-229(13), you must attempt to informally resolve your complaint through your Correctional Counselor. Please follow the three steps listed below:

1. State your complaint: _Under Warden, D. Easter's supervision of the jail the 10 man rooms are closed and the result is _____ I am made to sleep and live 2-3 feet apart in a space where there is roughly 70 plus men living 2-3 feet apart from and on top of each other. Living in such close proximity is not only dangerous_ → Continue on back

2. State what actions you have made to informally resolve your complaint: _I have spoken to supporting and administrative staff about the Ten man rooms and the inability to social distance._

3. State what resolution you expect: _I expect for the ten man rooms to be ____ opened up immediately._

Inmate's Signature: _ANDRE CALIX_        Date: _11/13/2020_

4. Correctional Counselor's Comments (Steps Taken to Resolve): _See attached_

5. Informal Resolution WAS / (WAS NOT) accomplished. (Circle One)

_K. Lens /K. ___

_____        Unit Manager
Correctional Counselor

                                _11/16/2020_
_____        _____
Date                        Date

|          | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | REMEDY CLERK |
|----------|-------------|---------------|-------------|---------------|--------------|
| DATE     |             | 11/13/20      |             |               |              |
| TIME     |             |               |             |               |              |
| COUNSELOR|             | K. Lens       |             |               |              |

Continued

... and hazardous to my health given the COVID-19 outbreak and positive cases that keep popping up into this institution but also because of the scabies outbreak and the fact that there are numerous people in the unit breaking out and a itching and scratching from some other "unknown" rash as well that is being said to be COVID-19 related. When the civil suit was instituted against the Warden regarding COVID-19 the 10 man rooms were opened to make it appear to the court that everyone were spaced out, however, immediately following word of a settlement being reached in the civil action the 10 mans were closed and everyone was pushed right back on top of each other and inmates were frequently brought into the unit from transfers into the institution filling and keeping ~~everyone~~ nearly every bed filled at all times. I expect for the ten mans to be opened up immediately .

*C Unit*

Calix, Andre
Register Number: 68956-054
Request for Informal Resolution (BP-8)

---

### Part B - Response

This is in response to your Request for Administrative Remedy you initiated on November 12, 2020, wherein you request the ten man rooms to be opened immediately.

A review of the matter reveals the usage all ten man rooms to house inmates has been discontinued at FCI Danbury. Inmate capacities in each unit are being reviewed at this time to maximize social distancing. You mention that all inmates live 2-3 feet apart is not accurate. Inmate bunks are approximately six feet apart. Inmates in the same bunk bed are also required to sleep head to toes, which further creates distance from each inmate's head while sleeping. All inmates are also provided mask to prevent the transmission of the COVID virus to other inmates.

I trust this information is responsive to your concerns.


_K. Lewis_
K. Lewis, Unit Manager

11/16/2020
Date

12/29/20 DOS

**U.S. Department of Justice**                    **Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: ___**CALIX ANDRE**___ ___**68956-054**___ ___**C-A**___ ___**FCI-Danbury**___
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

Part A - REASON FOR APPEAL  I appealed the attached rejection to the Northeast Regional Office on the basis that Unit Team being responsible for addressing informal resolution cannot investigate and resolve misconduct on the part of the Captain as the Rejection would suggest. And further because request for administrative remedy at the Warden, D. Easter level was not administered in a forthcoming manner. I sent an appeal to the Northeast Regional Office by legal mail Wednesday 11/25/2020. I have neither received a receipt nor response for the appeal to the Regional Office.

___**1/3/2021**___                         ___**ANDRE CALIX**___
DATE                                  SIGNATURE OF REQUESTER

Part B - RESPONSE


_____                    _____
DATE                                         GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                     CASE NUMBER: _____

Part C - RECEIPT                               CASE NUMBER: _____

Return to: _____    _____  _____  _____
          LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.       UNIT        INSTITUTION

SUBJECT: _____

_____                    _____
DATE                                         SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
JUNE 2002

**U.S. Department of Justice**    11-10-20    **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __CALIX    ANDRE__    __68956-054__    __C-A__    __FCI-Danbury__
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

Part A - REASON FOR APPEAL   I was directed by the Unit Manager to file a BP-9 given the fact that the attached complaint specifically involves misconduct on the part of Captain, S. Whitley and as BP-8s are handled by Unit Team, whom all falls under his supervision or are his subordinates, they are not permitted to investigate this matter. In addition, not only is the rejection not signed, but, it is entered as received 11/8/2020 which is questionable for several reasons. One, I submitted the complaint to Unit Manager, Louis Thursday 10/8/2020; Two, I was never issued a receipt for the complaint; and three, 11/8/2020 fell on a Sunday which is a day that Unit Manager, Louis has informed me that Executive Assistant, Blackman-Conston and her assistant Peterson, whom are responsible for Administrative Remedy Coordinator duties, does not work.

__11/15/2020__                                 __ANDRE CALIX__
    DATE                                         SIGNATURE OF REQUESTER

Part B - RESPONSE

 

_____         _____
    DATE                                      REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                         CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Part C - RECEIPT

                                               CASE NUMBER: _____

Return to: _____
         LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.         UNIT         INSTITUTION

SUBJECT:_____

_____         _____
    DATE                            SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)

REJECTION NOTICE - ADMINISTRATIVE REMEDY


DATE: NOVEMBER 13, 2020



FROM: ADMINISTRATIVE REMEDY COORDINATOR
      DANBURY FCI

TO  : ANDRE CALIX, 68956-054
      DANBURY FCI    UNT: W    QTR: C02-014L
      ROUTE 37
      DANBURY,  CT 06811



FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 1056611-F1      ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED   : NOVEMBER 8, 2020
SUBJECT 1       : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION
                 OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE
                 NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION.

U.S. DEPARTMENT OF JUSTICE

REQUEST FOR ADMINISTRATIVE REMEDY

Federal Bureau of Prisons

10/1/20
10

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __CALIX    ANDRE__    __68956-054__    __SHU__    __FCI-Danbury__
       LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A– INMATE REQUEST** On Monday 10/5/20 Captain, Whitley walked by my cell doing a round in the SHU. I stopped him and explained to him how I was in the SHU for absolutely nothing as I did nothing wrong and my neighbor inmate Sterling in bunk 5 lower could verify I was in my bunk when the commotion in unit C-A was transpiring. I even explained to Captain, Whitley that Lt. Perry himself checked me when they did a body search on the unit and he told me I was good. I further explained to Captain, Whitley that when the Lieutenant came and took me to SHU a couple hours later he lied and said SIS gave him my name in response to my question as to why I was being taken to SHU. I then showed the Captain the initial Administrative Detention Order I was given and how it did not specify and articulate how I posed any kind of threat to be in general population and/or how I even came to be in an SIS investigation. I also showed him the falsified Administrative Detention Order, which was changed and signed and dated 9/29/20 at 4:32 AM giving the false impression that it was generated and given to me at that date and time when in fact it was given to me ~~when it was~~ 9/30/20 at around 9:30PM-10:15PM. The Captain said he don't know why it was changed insisting that they ~~have~~ do not to give me any reason for being in SHU. I told him I would not debate with him about policy and in any event I was innocent and wrongfully segregated and attempted to show him the BP-8 I wrote on Lt. Perry. He got upset and told me he did not care about anything I had to say, to file paperwork on him, and that he got something for me. I request Captain, Whitley be reprimanded, put in for psych exam, investigated for corruption, and demoted.

    __10/7/20__                               __ANDRE CALIX__
       DATE                                       SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____ DATE _____              _____ WARDEN OR REGIONAL DIRECTOR _____

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

__FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE__      CASE NUMBER: __1056611-F1__

                                                CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____    _____    _____    _____
       LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____ DATE _____              _____ RECIPIENT'S SIGNATURE (STAFF MEMBER) _____

BP–229(13)
APRIL 1982

USP LVN

BP-A0308
JAN 17

**ADMINISTRATIVE DETENTION ORDER**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

DANBURY FCI
Institution

Date/Time: 09-29-2020 04:32

TO: Special Housing Unit Officer

FROM: LT. PERRY, LIEUTENANT _____, (Name/Title)

SUBJECT : Placement of _____ CALIX, ANDRE _____, Reg. No. ___ 68956-054 ___, in Administrative Detention

_____(a)  Is pending an investigation for a violation of Bureau regulations;

___✓___(b)  Is pending an SIS investigation.

_____(c)  Is pending investigation or trial for a criminal act;

_____(d)  Is to be admitted to Administrative Detention

_____(1)  Since the inmate has requested admission for protection;

I hereby request placement in Administrative Detention for my own protection.

Inmate Signature/Register No.: _____

Staff Witness Printed Name Signature: _____

_____(2)  Since a serious threat exists to individual's safety as perceived by staff, although person has not requested admission; referral of the necessary information will be forwarded for an appropriate hearing by the SRO.

_____(e)  Is pending transfer or is in holdover status during transfer.

_____(f)  Is pending classification; or

_____(g)  Is terminating confinement in Disciplinary Segregation and has been ordered into Administrative Detention by the Warden's designee.

It is this Correctional Supervisor's decision based on all the circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution because*

Pending SIS Investigation

Therefore, the above named inmate is to be placed in Administrative Detention until further notice. The inmate received a copy of this Order on

(date / time) _9/20/20_ _5 ᵈⁱᵘ_

StaffWitness Signature/Printed Name _W. Carr_ _____ Date _9/20/20_

Supervisor 24 hour review of placement Signature/Printed name _____

* In the case of DHO action, reference to that order is sufficient. In other cases, the Correctional supervisor will make an independent review and decision, which is documented here.

Record Copy - Inmate Concerned (not necessary if placement is a result of holdover status); Copy - Captain; Copy - Unit Manager; Copy - Operation Supervisor - Administrative Detention Unit; Copy - Psychology; Copy - Central File

PDF                    Prescribed by P5270          (Replaces BP-A0308 of JAN 88.)

| BP-A0308 | **ADMINISTRATIVE DETENTION ORDER** | **U.S. DEPARTMENT OF JUSTICE** |
|---|---|---|
| JAN 17 | | **FEDERAL BUREAU OF PRISONS** |

DANBURY FCI
_____
Institution

Date/Time: 09-29-2020 04:32

TO: Special Housing Unit Officer

FROM: LT. PERRY, LIEUTENANT _____, (Name/Title)

SUBJECT : Placement of _____ CALIX, ANDRE _____, Reg. No. ____ 68956-054 ____, in Administrative Detention

_____ (a)  Is pending an investigation for a violation of Bureau regulations;

__✓__ (b)  Is pending an SIS investigation.

_____ (c)  Is pending investigation or trial for a criminal act;

_____ (d)  Is to be admitted to Administrative Detention

       _____ (1)  Since the inmate has requested admission for protection;

I hereby request placement in Administrative Detention for my own protection.

       Inmate Signature/Register No.: _____

       Staff Witness Printed Name Signature: _____

       _____ (2)  Since a serious threat exists to individual's safety as perceived by staff, although person  has not requested admission; referral of the necessary information will be forwarded for an appropriate hearing by the SRO.

_____ (e)  Is pending transfer or is in holdover status during transfer.

_____ (f)  Is pending classification; or

_____ (g)  Is terminating confinement in Disciplinary Segregation and has been ordered into Administrative Detention by the Warden's designee.

It is this Correctional Supervisor's decision based on all the circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates,  or to the security or orderly running of the institution because*

PENDING SIS INVESTIGATION - ASSAULT/FIGHT

Therefore, the above named inmate is to be placed in Administrative Detention until further notice. The inmate received a copy of this order on

(date / time) _____    9/29/20  4:32

Staff Witness Signature/Printed Name_____    Date  9/29/20

Supervisor 24 hour review of placement: Signature/Printed name_____

* In the case of DHO action, reference to that order is sufficient.  In other cases, the Correctional supervisor will make an independent review and decision, which is documented here.

Record Copy - Inmate Concerned (not necessary if placement is a result of holdover status); Copy - Captain; Copy -  Unit Manager; Copy - Operation Supervisor - Administrative Detention Unit; Copy – Psychology; Copy - Central File

| POF | Prescribed by P5270 | (Replaces BP-A0308 of JAN 88.) |
|---|---|---|

REJECTION NOTICE - ADMINISTRATIVE REMEDY

ATE: APRIL 1, 2021

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : ANDRE CALIX, 68956-054
      DANBURY FCI    UNT: W    QTR: C02-014L
      ROUTE 37
      DANBURY,  CT 06811

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 1061860-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED   : MARCH 16, 2021
SUBJECT 1       : PERSONAL CLOTHING OR LAUNDERING
SUBJECT 2       : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
INCIDENT RPT NO:

REJECT REASON 1: CONCUR WITH RATIONALE OF REGIONAL OFFICE AND/OR INSTITUTION
                 FOR REJECTION. FOLLOW DIRECTIONS PROVIDED ON PRIOR REJECTION
                 NOTICES.

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From:    **CALIX   ANDRE**                **68956-054**    **C-A**    **FCI-Danbury**
LAST NAME, FIRST, MIDDLE INITIAL            REG. NO.        UNIT        INSTITUTION

**Part A - REASON FOR APPEAL** The Regional Director has neither acknowledged nor responded to appeal attached.

**2/18/2021**
DATE

**ANDRE CALIX**
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

MAR 1 6 2021

Administrative Remedy Section
Federal Bureau of Prisons

_____            _____
DATE                                GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _1061860-A1_

**Part C - RECEIPT**
                                    CASE NUMBER: _____

Return to: _____    _____    _____    _____
           LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.    UNIT        INSTITUTION

SUBJECT:_____

_____            SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL
DATE

USP LVN        PRINTED ON RECYCLED PAPER

12/16/20 OS

**U.S. Department of Justice**                    **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: _____CALIX    ANDRE_____  _68956-054_  _C-A_  _FCI-Danbury_
          LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A - REASON FOR APPEAL**  I complained regarding the fact that I was forced to wear one set of soiled institutional clothing for seven days during a scabies outbreak. Warden, D. Easter neither acknowledged receipt nor responded to the complaint. Note *I received attached rejection Tuesday 12/22/2020. It is marked as received 12/21/2020 when Counselor Bozek turned it in around about Tuesday 11/24/2020. The reasons for rejection are not even forthcoming. That this procedure was not administered candidly is further illustrated by the fact that I never received formal notice of receipt and the Request is not duly signed. 12/23/2020 ANDRE CALIX

_12/20/2020_                          _ANDRE  CALIX_
       DATE                                SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____                    _____
        DATE                                    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

**Part C - RECEIPT**
                                              CASE NUMBER: _____

Return to: _____  _____  _____  _____
              LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____                    _____
        DATE                          SIGNATURE, RECIPIENT OF REGIONAL APPEAL

FPI-PEPR          PRINTED ON RECYCLED PAPER                              BP-230(13)
                                                                        JUNE 2002

**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: ___CALIX___ ___ANDRE___ ___68756-054___ ___C-A___ ___FCI-Danbury___
    LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A- INMATE REQUEST** During a scabies outbreak in which all personally property was taken I was forced to wear one set of institutional clothing (uniform, underwear, t-shirt, socks) for seven consecutive days despite the fact that I complained, of having nothing to change into, to Unit Manager, Lewis, and several Lieutenants including Lt. Hernandez. Lt. Hernandez actually said that I would be allowed just the clothing I was wearing until completion of the scabies treatment which was seven days. I request all staff responsible to be reprimanded and for Lieutenant, Hernandez to be referred for psychological examination and disallowed to work around inmates until a medical professional can make a determination as to her mental state.

___11/21/2020___
        DATE

___ANDRE CALIX___
        SIGNATURE OF REQUESTER

**Part B- RESPONSE**

_____
        DATE

_____
        WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**THIRD COPY: RETURN TO INMATE**

CASE NUMBER: ___106018600-F1___

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____ _____ _____ _____
        LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____
        DATE

RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN        PRINTED ON RECYCLED PAPER

BP-229(13)
APRIL 1982

DAN 1330.18
ATTACHMENT A

FEDERAL CORRECTIONAL INSTITUTION
DANBURY, CONNECTICUT
INFORMAL RESOLUTION

Inmate Name: ANDRE CALIX                    Reg. No. 68956-054
Unit: C-A                                   Date: 11/12/2020

NOTICE TO INMATE: You are advised that normally prior to filing a
Request for Administrative Remedy, BP-229(13), you must attempt to
informally resolve your complaint through your Correctional Counselor.
Please follow the three steps listed below:

1. State your complaint: During an outbreak in the facility of
"scabies" and at a time while the unit I'm in is being treated for
scabies by having all personal property taken away, etc. I
have been left with 1 set of institutional clothing (underwear,
t-shirt, socks, etc.) without anything to change into for three days —▷ Continue
on
back

2. State what actions you have made to informally resolve your
complaint: I have spoken to unit manager Louise, Lieutenant,
Durant, and Lt. Cortes.

3. State what resolution you expect: I expect a proper set of clothing
immediately to change and also for Lieutenant, Hernandez to be
reprimanded and reviewed for a psychological examination and for
her to be disallowed to work around inmates until a medical professional
can make a determination as to her mental state.
Inmate's Signature: ANDRE CALIX          Date: 11/12/2020

4. Correctional Counselor's Comments (Steps Taken to Resolve): _____
See attached

5. Informal Resolution (WAS)/ WAS NOT accomplished. (Circle One)

                                          K. Luis / K. ___

_____                 _____
Correctional Counselor                    Unit Manager
                                          11/16/2020
_____                 _____
Date                                      Date

| | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | | 11/13/20 | | | |
| TIME | | | | | |
| COUNSELOR | | K. Luis | | | |

Continued

... being forced to wear the same dirty and soiled clothing. On Thursday November 11/12/2020 I brought this to the attention of Lieutenant, Hernandez at mainline lunch feeding. She displaying an indifferent attitude said I need to let the Unit Manager know and its not her department. I told her Unit Manager Louis knows already and this was told to laundry. (The day prior to this wednesday 11/11/2020 I brought this to Lieutenant, Durant's attention and he instructed me to tell the Unit Officer (Officer, Dubret) to call Officer, Johnson in laundry and tell him to issue me the appropriate set of clothing. Officer, Dubret informed me that he did so and laundry was not being compliant.) When Lieutenant, Hernandez told me again that I need to speak to someone in laundry or unit team I went over to Lieutenant, Cortes. As Lieutenant, Cortes was taking down my name Lieutenant, Hernandez said I should only be allowed to have what I was wearing for seven days. I responded that makes no sense for me to have to wear the same dirty clothing for seven days with a so-called scabies outbreak going around in the facility. She said yeah that is why thats happening to you all now. I could make no sense of her sarcastic comments, but, I expect to be issued a proper set of clothing so I can have something clean to change into immediately and for Lieutenant, Hernandez to be reprimanded and reviewed for a psychological examination. I also expect for her to be disallowed to work around inmates until a medical professional can make a proper determination as to her mental state.

Also along with having no change of clothing I have no jacket or hat and am enduring freezing temperatures and rain for the last couple days that I had to go outside to get food from the food service.

C unit

Calix, Andre
Register Number: 68956-054
Request for Informal Resolution (BP-8)

---

Part B - Response

This is in response to your Request for Administrative Remedy you
initiated on November 12, 2020, wherein you state you require
additional clothing issue from the Laundry department.

A review of the matter reveals you were released from Special Housing
on November 6, 2020.  On November 16, 2020, I called the Laundry
department and asked them to issue you the proper allotment of
institutional clothing.

I trust this information is responsive to your concerns.

_K. N_____

K. Lewis, Unit Manager

_11/16/2020_

Date

Andre [REDACTED] 68956-054
FcI- [REDACTED]
33½ Pembroke Rd
Danbury, C.T. 06811

White Plains, NY 10610
FRI APR 01 2022 PM

Clerk of the Court
United States District Court
District of Connecticut
915 Lafayette Boulevard, Room 400
Bridgeport, C.T. 06604